Robert B. Carey
HAGENS BERMAN SOBOL SHAPIRO LLP
11 West Jefferson Street, Suite 1000
Phoenix, AZ 85003
Telephone: (602) 840-5900
Facsimile:  (602) 840-3012
rob@hbsslaw.com

Steve W. Berman (*pro hac vice* forthcoming)
Marin D. McLean (*pro hac vice* forthcoming)
Jacob P. Berman (*pro hac vice* forthcoming)
Lauren S. Miller (*pro hac vice* forthcoming)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com
martym@hbsslaw.com
jakeb@hbsslaw.com
laurenm@hbsslaw.com

*Attorneys for Plaintiff Shelley Favours*

*[Additional Counsel on Signature Page]*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| SHELLEY FAVOURS,<br><br>   Plaintiff,<br><br> vs.<br><br>KONINKLIJKE PHILIPS, N.V.; PHILIPS NORTH AMERICA, LLC; and PHILIPS RS NORTH AMERICA, LLC,<br><br>   Defendants. | No.<br><br>**COMPLAINT FOR DAMAGES** |

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ............................................................................................... 1
II.   JURISDICTION AND VENUE ......................................................................... 3
III.  PARTIES ............................................................................................................ 3
      A.   Plaintiff .................................................................................................... 3
      B.   Defendants ............................................................................................... 4
IV.   STATEMENT OF FACTS ................................................................................ 4
      A.   Plaintiff's Injuries .................................................................................... 4
      B.   Philips Marketed Its Defective Breathing Devices ................................. 5
      C.   Philips Recalled Its Defective Breathing Devices .................................. 5
      D.   Philips Understands the Danger Posed by the PE-PUR Foam
           Defect ....................................................................................................... 6
      E.   Philips Has Not Provided Its Customers with Replacement
           Devices or Refunds .................................................................................. 7
V.    CAUSES OF ACTION ...................................................................................... 8
COUNT I    FAILURE TO WARN - STRICT LIABILITY .............................................. 8
COUNT II   DESIGN DEFECT - STRICT LIABILITY .................................................... 9
COUNT III  NEGLIGENT FAILURE TO WARN .......................................................... 11
COUNT IV   NEGLIGENT DESIGN DEFECT ............................................................... 12
COUNT V    NEGLIGENT RECALL ............................................................................... 13
COUNT VI   BREACH OF EXPRESS WARRANTY ..................................................... 13
COUNT VII  BREACH OF THE IMPLIED WARRANTY ............................................ 14
COUNT VIII ARIZONA'S CONSUMER FRAUD ACT
           (AZ. REV. STAT. §§ 44-1522, *ET SEQ.*) ................................................ 15
COUNT IX   UNJUST ENRICHMENT ............................................................................ 16
PRAYER FOR RELIEF .................................................................................................. 16
JURY DEMAND ............................................................................................................. 17

Plaintiff, Shelley Favours, brings this personal injury case for damages and Demands a Jury trial based on her use of now recalled assisted breathing medical devices designed, marketed, promoted, manufactured, distributed, and sold by defendants Koninklijke Philips, N.V., Philips North America, LLC, and Philips RS North America, LLC (collectively "Philips" or "Defendants"). Plaintiff brings this suit based on her medical and emotional injuries caused by this admittedly defective device and asserts claims for: (1) Failure to Warn; (2) Design Defect, Strict Liability; (3) Negligent Failure to Warn; (4) Negligent Design Defect; (5) Negligent Recall; (6) Breach of Express Warranty; (7) Breach of the Implied Warranty of Merchantability; (8) Arizona Consumer Fraud Act (AZ. Rev. Stat. §§ 44-1522, *et seq.*); and (9) Unjust Enrichment.

## I. INTRODUCTION

1. This action arises from the personal injuries Plaintiff, Shelley Favours suffered as a result of using defendants Continuous Positive Airway Pressure ("CPAP") breathing machine.

2. In 2017, Plaintiff was prescribed and starting using her CPAP machine for sleep apnea. She used the machine nightly, for at least eight hours, until 2021.

3. Sleep apnea is a dangerous condition in which an obstruction in the throat causes a person to stop breathing for a brief period while sleeping. At best, the condition causes daily fatigue and restlessness. At worst, sleep apnea can seriously impede the flow of oxygen resulting in brain damage or death.

4. In CPAP therapy, a machine delivers flow of air through a mask over the nose or mouth, which increases air pressure in the throat, so the airway does not collapse during inhalation. CPAP therapy assists breathing during sleep and successfully treats sleep apnea.

5. Since using the CPAP machine, Plaintiff has been diagnosed with stage II ductal carcinoma, and has undergone substantial treatment including a lumpectomy and radiation. In addition, she has suffered emotional distress as a result of her debilitating health issues.

6. Philips was responsible for the design, marketing, manufacture, post-marketing surveillance, sale, advertising, promotion, warning, and distribution of a variety of CPAP and Bi-Level Positive Airway Pressure ("BiPAP") devices for patients with obstructive sleep apnea. Philips also manufactures, markets, imports, sells, and distributes a variety of ventilator devices subject to the recall.

7. On June 14, 2021, Philips voluntarily recalled 3-4 million of these sleep apnea machines and mechanical ventilators ("Recalled Medical Devices") in the United States. *See* Recall Notice attached as **Exhibit A**.

8. The recalled medical devices contain polyester-based polyurethane ("PE-PUR") foam for sound abatement. Philips announced that this foam may break down and be inhaled or ingested. Critically, the PE-PUR foam may emit volatile compounds ("VOCs") that may be inhaled, ingested, adversely affect organs and are carcinogenic. Philips announced these hazards could result in "serious injury which can be life threatening or cause permanent impairment."

9. In its, recall announcement Philips advised its customers to discontinue use of their affected CPAP and BiPAP devices, and it instructed mechanical ventilator patients to continue treatment until they are able to consult with their physicians. Phillips also recognized that CPAP and BiPAP customers may have to continue using their devise due to "lack of alternatives," and that "alternate ventilator options for therapy may not exist or may be severely limited for patients who require a ventilator for life sustaining therapy, or in cases where therapy disruption is unacceptable."

10. Philips knew about these very substantial and material risks long before the recall. Patients who used the Recalled Breathing Machines have complained about black particles in their machines for several years, including Plaintiff Shelley Favours. When she started using her CPAP device for sleep Apnea in July of 2017, she was not aware of the harm these particles would cause. Philips did not warn the public or its customers about these hazards until late April 2021 and did not initiate a recall until June 14, 2021.

Shockingly, absent this litigation, Philips had no plan to replace or repair any of the affected devices.

11. In fact, Philips timed its recall of the Recalled Breathing Machines to coincide with the launch of its next generation of products, which purportedly do not suffer from the same PE-PUR foam issues. Thus, the only safe option that Philips offers to Plaintiff is to purchase Philips' newer model, thus profiting Philips further.

12. Consequently, Plaintiff now faces an impossible choice. She needs her CPAP machine to breath, but Philips has told her that further use of her device is dangerous. She could purchase a new device without PE-PUR foam, but these machines are in limited supply and very expensive. Despite the immediacy of the issue, Philips has only made vague promises of a future "recall and replacement" program, without giving any of its customers new devices, money to buy new devices, or even direction on how to self-remedy the PE-PUR foam defect.

## II.   JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction pursuant to under 28 U.S.C. § 1332, diversity jurisdiction. The amount in controversy exceeds $75,000.

14. Venue is proper in this District under 28 U.S.C. § 1391 because Philips has a principal place of business in this district; Philips has marketed, advertised, sold, and leased its products within this District; and many of the acts and transactions giving rise to this suit occurred in this District, including manufacturing, promotion, marketing, distribution, and sale of CPAP/Bi-PAP devices.

## III.   PARTIES

A.   **Plaintiff**

15. Plaintiff Shelley Favours is an adult resident of Arizona and citizen of Flagstaff, Arizona. Flagstaff, Arizona is located in Coconino County.

16. In 2017, Plaintiff was prescribed a DreamStation CPAP device in Flagstaff, Arizona by Dr. Martha Barlow.

17. On September 30, 2020, Plaintiff obtained a new DreamStation CPAP device in Flagstaff, Arizona.

**B.  Defendants**

18. Koninklijke Philips, N.V. is a Dutch multinational company headquartered in Amsterdam, Netherlands, and is the parent company of Philips North America, LLC and Philips RS North America, LLC.

19. Defendant Philips North America, LLC is a Delaware company with its principal place of business in Cambridge, Massachusetts.

20. Defendant Philips RS North America, LLC (formerly Respironics, Inc.) is Delaware company headquartered in Pittsburgh, Pennsylvania.

### IV.  STATEMENT OF FACTS

**A.  Plaintiff's Injuries.**

21. On July 21, 2017, Plaintiff Shelley Favours was prescribed a CPAP device by Martha Barlow, NP at Northern Arizona Healthcare. She was prescribed the device because she was experiencing sleep apnea. She used the device nightly for the next three years to treat her condition. On September 30, 2020, she received a new CPAP machine. She used this device until July 14, 2021 when she was notified of the CPAP recall.

22. Plaintiff hoped CPAP therapy would be an effective treatment for her sleep apnea. However, after using the devices daily for four years, she began experiencing serious health conditions. Specifically, she was diagnosed with a ductal carcinoma. Plaintiff underwent significant treatment, including a lumpectomy and radiation. In addition, Plaintiff experienced headaches, inflammation, and sinus issues.

23. The knowledge and information about the dangers disclosed by Philips in the *Urgent Medical Device Recall* were unknown, available, or knowable to Plaintiff before June 14, 2021. This lawsuit is therefore timely and brought within the prescribed limitations period based upon legal principles of accrual, discovery, and tolling.

**B.  Philips Marketed Its Defective Breathing Devices.**

24. Philips, through its RS (formerly Respironics) and Philips NA subsidiaries, manufactures and sells several lines of CPAP machines, BiPAP machines and mechanical ventilators. Philips markets these products as "Sleep & Respiratory Care," part of its "Connected Care" segment of business. In 2020, Sleep & Respiratory Care accounted for 49% of Philips' total worldwide Connected Care sales. Philips has sold approximately two million Defective Breathing Devices in the United States and 3-4 million total devices worldwide.

25. Philips markets these devices as safe and effective. For example, Philips' website says that its DreamStation CPAP and BiPAP machines "empower users to embrace their care with confidence, and enable care teams to practice efficient and effective patient management." Philips has advertised its ventilation products as "effective and affordable."

26. Philips does not mention in any of its marketing, advertising, labeling or instruction materials that the foam in the Defective Breathing Devices may degrade and pose a serious health threat to users.

27. Philips' CPAP, BiPAP, and mechanical ventilator products are very expensive, costing up to thousands of dollars in retail price.

**C.  Philips Recalled Its Defective Breathing Devices.**

28. Philips' first public admission of trouble with these devices came in its Q1 2021 quarterly report on April 26, 2021. Under the innocuous heading "Regulatory Update," Philips disclosed for the first time that "user reports and testing" indicated "that there are possible risks to users related to the sound abatement foam used in certain of Philips' sleep and respiratory care devices currently in use." Philips admitted that "the foam may degrade under certain circumstances," but it did not specify the risks from this degradation. Philips did not issue a recall at this time.

29. Nearly two months passed without a public update. Finally, on June 14, 2021, Philips issued a "voluntary recall notification." In this notification, Philips admitted that there were two dangerous conditions at issue: the potential that PE-PUR foam "may

degrade into particles which may enter the device's air pathway and be ingested or inhaled by the user"; and the possibility that the PE-PUR foam "may off-gas certain chemicals" (also known as "Volatile Organic Compounds," or "VOCs"). This notification warned that the PE-PUR foam degradation can cause "headache, irritation, inflammation, respiratory issues, and possible toxic and carcinogenic effects"; and that VOCs from the foam can cause "headache, irritation, hypersensitivity, nausea/vomiting, and possible toxic and carcinogenic effects."

30. In this document, Philips also provided further information about the risks from VOC exposure. Philips stated, "VOCs are emitted as gases from the foam included in the CPAP, BiLevel PAP and MV devices and may have short- and long-term adverse health effects." The VOCs emitted by the PE-PUR foam at unsafe levels include "Dimethyl Diazine" and "Phenol, 2,6- bis (1,1-dimethylethyl)-4-(1-methylpropyl)." These VOCs "may cause irritation and airway inflammation," something which Philips admitted may be particularly grave for patients with underlying lung diseases or reduced cardiopulmonary reserve."

31. Notably, Philips did not recall its DreamStation 2 CPAP machines, which it released in 2020. The DreamStation 2 line of products do not have PE-PUR foam insulation. This fact raises an inference that Philips knew prior to its April 26 and June 14, 2021 notices that the PE-PUR foam was dangerous to its respirator and ventilator users.

**D.      Philips Understands the Danger Posed by the PE-PUR Foam Defect.**

32. Despite its understated rhetoric, Philips understands the risk at which it put its customers.

33. Philips instructed its CPAP and BiPAP users to "[d]iscontinue use" of their machines. Nevertheless, recognizing that many patients have a "lack of alternatives" to their Defective Breathing Device, customers were directed to "consult with your physician to determine if the benefit of continuing therapy with your device outweighs the risks identified in the recall notification."

34. Although the PE-PUR foam defect is no less dangerous for customers who use mechanical ventilators, Philips has not instructed them to stop using their devices due to the "lifesustaining" nature of ventilation therapy. Once again, Philips understands that "alternate ventilator options for therapy may not exist or may be severely limited for patients who require a ventilator for life-sustaining therapy, or in cases where therapy disruption is unacceptable. In these situations, and at the discretion of the treating clinical team, the benefit of continued usage of these ventilator devices may outweigh the risks identified.

**E.   Philips Has Not Provided Its Customers with Replacement Devices or Refunds.**

35. Philips' so-called "recall" does not actually provide Plaintiff with a new CPAP device, but again suggests consumers can buy the next generation of its product. As Philips' June 14, 2021 announcement makes clear:

> Repair and replacement program Philips is providing the relevant regulatory agencies with required information related to the launch and implementation of the projected correction. The company will replace the current sound abatement foam with a new material and has already begun the preparations, which include obtaining the relevant regulatory clearances. Philips aims to address all affected devices in scope of this correction as expeditiously as possible.
>
> As part of the program, the first-generation DreamStation product families will be modified with a different sound abatement foam and shipped upon receipt of the required regulatory clearances. Philips' recently launched next-generation CPAP platform, DreamStation 2, is not affected by the issue. To support the program Philips is increasing the production of its DreamStation 2 CPAP devices, that are available in the US and selected countries in Europe.

36. Thus, Philips is not currently replacing the foam in the affected devices and may take a year or more to provide replacement foam.

37. At the same time, Philips intends to profit from the so-called recall by selling more of its next generation product, the DreamStation 2. Philips intentionally timed the recall to coincide with the launch of the DreamStation 2.

38. Due to the design of the Recalled Breathing Machines, it is prohibitively difficult for Plaintiff to remove or replace the PE-PUR foam herself. There is also a general shortage of available replacement machines.

39. But Plaintiff needs to use her machine every day, or else her symptoms—which can be severe and life-altering—may return.

40. As a result, the recall by Philips leaves Plaintiff without safe, free options. Plaintiff may buy Philips' next-generation product or a competitor's product—at full price.

41. Pursuant to the statements issued by Philips that are set forth above, Philips has admitted that the Recalled Breathing Machines are defective and unsafe. The Recalled Breathing Machines are effectively worthless and/or have a far lesser value than what customers paid and would not have been purchased by patients if they were informed of the defect at the time of sale.

### V.   CAUSES OF ACTION

### COUNT I

### FAILURE TO WARN - STRICT LIABILITY

42. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

43. Defendants had a duty to warn Plaintiff regarding the defect and true risks associated with the Recalled Breathing Machines.

44. Defendants failed to provide adequate warnings regarding the risks of the PE-PUR foam.

45. Defendants had information regarding the true risks but failed to warn Plaintiff, the public, and Plaintiff's physicians of the dangerous risks associated with the use of the Recalled Breathing Machine, which were known or should have been known to Defendants, as the information was scientifically readily available.

46. Despite Defendants' obligation to unilaterally strengthen the warnings, Philips instead chose to actively conceal this knowledge.

47. Defendants knew and intended that the Recalled Breathing Machines would be prescribed by physicians and would be used by persons. Defendants also knew that physicians and users such as Plaintiff would rely upon the representations made by Defendants in the Recalled Breathing Machine product labels and in Defendants' promotional and sales materials, upon which the Plaintiff's prescribing physicians did so rely.

48. Plaintiff would not have purchased, chosen, and/or paid for all or part of the Recalled Breathing Machines if she knew of the defect and the risks of purchasing the product.

49. This defect proximately caused Plaintiff's injuries which include economic injuries, as well as ductal carcinoma, headaches, inflammation, sinus issues, and exposure to materials with toxic and carcinogenic effects.

50. Defendants' conduct in the packaging, warning, marketing, advertising, promotion, distribution, and sale of Recalled Breathing Machines was committed with knowing, conscious, and deliberate disregard for the rights and safety of consumers such as Plaintiff, thereby entitling Plaintiff to damages in an amount to be determined at trial.

## COUNT II

## DESIGN DEFECT - STRICT LIABILITY

51. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

52. Defendants were the manufacturers, labelers, sellers, distributors, marketers, and/or suppliers of the Recalled Breathing Machines, which are defective and unreasonably dangerous to consumers.

53. Defendants' product was labeled, sold, distributed, supplied, manufactured, marketed, and/or promoted by Defendants, and was expected to reach and did reach consumers without substantial change in the condition in which it was manufactured and sold by Defendants.

54. The design of the Recalled Breathing Machines, including, but not limited to, design, manufacturing, and use of the PE-PUR foam and the placement of the foam within the Recalled Breathing Machines, was defective and unreasonably dangerous, causing degradation and inhalation of the PE-PUR foam, and causing economic injuries, as well as ductal carcinoma, headaches, inflammation, sinus issues, and exposure to materials with toxic and carcinogenic effects.

55. The design of the Recalled Breathing Machines and the PE-PUR foam rendered the Recalled Breathing Machines not reasonably fit, suitable, or safe for their intended purpose.

56. The dangers of the Recalled Breathing Machines outweighed the benefits and rendered the products unreasonably dangerous. Indeed, there are other CPAP and other machines that do not use a similarly toxic foam that is subject to degradation, inhalation, and ingestions.

57. Upon information and belief, Defendants knew of the defective nature of the Recalled Breathing Machines but continued to design, manufacture, market, and sell them so as to maximize sales and profits at the expense of public health and safety.

58. Safer, alternative machines from other manufacturers were available that did not suffer from the defect as set forth herein and that did not have an unreasonable risk of harm as with the Recalled Breathing Machines and their unsafe PE-PUR foam.

59. The risk benefit profile of the Recalled Breathing Machines was unreasonable, the products should have had stronger and clearer warnings or should not have been sold in the market.

60. At all times material, Recalled Breathing Machines were expected to reach, and did reach, users and/or consumers across the United States, including Plaintiff, without substantial change in the defective and unreasonably dangerous condition in which it was sold.

61. Plaintiff used her Recalled Breathing Machines for their intended or reasonably foreseeable purpose and the Recalled Breathing Machines did not perform as an ordinary consumer would expect.

62. As a direct, proximate, and producing result of the defective and unreasonably dangerous condition of the Recalled Breathing Machines, Plaintiff sustained harm for which Plaintiff is entitled to damages.

63. Defendants' aforementioned conduct was committed with knowing, conscious, and deliberate disregard for the rights and safety of consumers such as Plaintiff and entitles Plaintiff to damages in an amount to be determined at trial.

## COUNT III

## NEGLIGENT FAILURE TO WARN

64. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

65. Under Arizona law, manufacturers have a duty to adequately warn of a particular risk that was known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of manufacture and distribution.

66. Defendants owed Plaintiff a duty of care and to warn of any risks associated with the Recalled Breathing Machines. Defendants knew or should have known of the true risks but failed to warn Plaintiff and her doctors.

67. Defendants' negligent breach of duty caused Plaintiff economic damages and injuries in the form of ductal carcinoma, headaches, inflammation, respiratory issues, and exposure to materials with toxic and carcinogenic effects.

68. Plaintiff would not have purchased, chosen, and/or paid for all or part of the Recalled Breathing Machines if she knew of the defect and the risks associated with purchasing the product.

69. Plaintiff suffered damages in an amount to be determined at trial.

## COUNT IV

## NEGLIGENT DESIGN DEFECT

70. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

71. Under Arizona law, manufacturers have a duty to adequately warn of a particular risk that was known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of manufacture and distribution.

72. Defendants negligently designed the Recalled Breathing Machines. Philips owed Plaintiff a duty to design the Recalled Breathing Machines in a reasonable manner. The design of the Recalled Breathing Machines, including, but not limited to, the design of the PE-PUR foam and the placement of the PE-PUR foam within the Recalled Breathing Machines, was defective and unreasonably dangerous, causing degradation and inhalation of the foam, causing economic injuries, as well as ductal carcinoma, headaches, inflammation, sinus issues, and exposure to materials with toxic and carcinogenic effects.

73. The design of the Recalled Breathing Machines and the PE-PUR foam rendered the Recalled Breathing Machines not reasonably fit, suitable, or safe for their intended purpose.

74. The dangers of the Recalled Breathing Machines outweighed the benefits and rendered the products unreasonably dangerous. Indeed, there are CPAP and other machines that do not use a similarly toxic foam that is subject to degradation, inhalation, and ingestions.

75. Safer, alternative machines from other manufacturers were available that did not have an unreasonable risk of harm as with the Recalled Breathing Machines and their unsafe foam.

76. The risk benefit profile of the Recalled Breathing Machines was unreasonable, and the products should have had stronger and clearer warnings or should not have been sold in the market.

77. The Recalled Breathing Machines did not perform as an ordinary consumer would expect.

78. Plaintiff suffered damages in an amount to be determined at trial.

## COUNT V

## NEGLIGENT RECALL

79. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

80. In issuing a voluntary recall, Philips assumed duties to Plaintiff to exercise reasonable care in issuing and implementing the recall.

81. Philips breached its duties by failing to adequately warn Plaintiff of the dangers associated with the use of the Recalled Breathing Machines by refusing to promptly repair or replace the Recalled Breathing Machines.

82. As a direct result of Defendants' breach of duty, Plaintiff has suffered harm in an amount to be determined at trial.

## COUNT VI

## BREACH OF EXPRESS WARRANTY

83. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

84. Defendants warranted the Recalled Breathing Machines "shall be free from defects of workmanship and materials and will perform in accordance with the product specifications for a period of two (2) years from the date of sale."

85. Defendants breached this express warranty in connection with the sale and distribution of the Recalled Breathing Machines. At the point of sale, the Recalled Breathing Machines while appearing normal—contained immediate defects as set forth herein, rendering them unsuitable and unsafe for personal use by humans.

86. Had Plaintiff known the Recalled Breathing Machines were unsafe for use, she would not have purchased it.

87. Defendants have breached their warranty and refused to provide appropriate warranty relief notwithstanding the risks of using the Recalled Breathing Machines. Plaintiff reasonably expected, at the time of purchase, that the Recalled Breathing Machines were safe for their ordinary and intended use.

88. As a direct and proximate result of Defendants' breach of express warranty, Plaintiff has sustained damages in an amount to be determined at trial.

## COUNT VII

## BREACH OF THE IMPLIED WARRANTY

89. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

90. By operation of law, Defendants, as manufacturers of the Recalled Breathing Machines and as the providers of a limited warranty for the Recalled Breathing Machines, impliedly warranted to Plaintiff that the Recalled Breathing Machines were of merchantable quality and safe for their ordinary and intended use.

91. Defendants breached the implied warranty of merchantability in connection with the sale and distribution of the Recalled Breathing Machines. At the point of sale, the Recalled Breathing Machines while appearing normal—contained defects as set forth herein rendering them unsuitable and unsafe for personal use by humans.

92. Had Plaintiff known the Recalled Breathing Machines were unsafe for use, she would not have purchased it.

93. Plaintiff relied on the Defendants' skill or judgment to provide a product suitable for this purpose. The Defendants are in the business of designing, manufacturing, selling, and marketing breathing machines and had reason to know that Plaintiff and/or her doctors would rely on Defendants' skill or judgment.

94. Recalled Breathing Machines are unfit for the purpose for which they were purchased; they are toxic to patients when put to their intended and ordinary use, causing injuries to consumers.

95. Defendants have refused to provide appropriate warranty relief notwithstanding the risks of using the Recalled Breathing Machines. Plaintiff reasonably expected, at the time of purchase, that the Recalled Breathing Machines were safe for their ordinary and intended use.

96. In addition to the common law, the conduct alleged herein constitutes a breach of the implied warranty of merchantability under the Uniform Commercial Code as codified in Arizona.

97. As a direct and proximate result of Defendants' breach of the implied warranty, Plaintiff has sustained damages in an amount to be determined at trial.

## COUNT VIII

### ARIZONA'S CONSUMER FRAUD ACT
### (AZ. REV. STAT. §§ 44-1522, *ET SEQ*.)

98. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

99. Plaintiff is a natural person residing in Coconino County, Arizona, thereby falling within the definition of "consumer" pursuant to A.R.S. § 44-1521.

100. Defendant is and at all times was doing business in Coconino County, Arizona.

101. Defendant is in the business of selling merchandise to consumers pursuant to A.R.S. § 44-1522.

102. Defendants engaged in unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce, with respect to the sale and advertisement of the Recalled Breathing Machines purchased by Plaintiff by misrepresenting the true quality of the Recalled Breathing Machines, and concealing the true risks of the Recalled Breathing Machines.

103. Defendant used deceptive practices, made false representations, concealed material facts, and suppressed or omitted material facts in connection with the sale or advertisement of its CPAP/BiPAP machines.

104. Defendant intended those others, including Plaintiff, rely upon such misrepresentations, deceptive methods, concealment of material acts and omission of material facts.

## COUNT IX

## UNJUST ENRICHMENT

105. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

106. Plaintiff conferred a tangible and material economic benefit upon Defendants by purchasing the Recalled Breathing Machines. Plaintiff would not have purchased, chosen and/or paid for all or part of the Recalled Breathing Machines had she known the true risks of using the Recalled Breathing Machines. Defendants are not providing a timely repair or replacement for the Recalled Breathing Machines. Under these circumstances, it would be unjust and inequitable for Defendants to retain the economic benefits they received at the expense of Plaintiff.

107. Failing to require Defendants to provide remuneration under these circumstances would result in Defendants being unjustly enriched at the expense of Plaintiff who endured being exposed to the risk of developing serious medical conditions and can no longer use their Recalled Breathing Machines safely.

108. Defendants' retention of the benefit conferred upon them by Plaintiff would be unjust and inequitable.

109. Plaintiff suffered damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

Wherefore, Plaintiff requests that the Court enter judgment against Defendants in the following fashion:

A. Stating that Defendants' conduct and practices violate the Arizona Consumer Fraud Act;

B. The full amount of Plaintiff's special damages;

C. The full amount of Plaintiff's general damages;

| | | |
|---|---|---|
| D. | The Full amount of Plaintiff's punitive damages; |
| E. | Exemplary damages to the full extent allowed by law; |
| F. | The full amount of Plaintiff's damages for loss of consortium; |
| G. | Plaintiff's attorneys' fees and costs; |
| H. | Prejudgment interest on Plaintiff's damages; and |
| I. | Such other and further relief the Court deems just and proper. |

**JURY DEMAND**

Plaintiff demands a trial by jury.

| | | |
|---|---|---|
| 1 | DATED: December 13, 2021 | Respectfully submitted, |
| 2 | | HAGENS BERMAN SOBOL SHAPIRO LLP |
| 3 | | |
| 4 | | By: /s/ *Robert B. Carey* <br> Robert B. Carey |
| 5 | | 11 West Jefferson Street, Suite 1000 <br> Phoenix, AZ 85003 |
| 6 | | Telephone: (602) 840-5900 <br> Facsimile:  (602) 840-3012 |
| 7 | | rob@hbsslaw.com |
| 8 | | |
| 9 | | Steve W. Berman (*pro hac vice* forthcoming) <br> Marin D. McLean (*pro hac vice* forthcoming) |
| 10 | | Jacob P. Berman (*pro hac vice* forthcoming) <br> Lauren S. Miller (*pro hac vice* forthcoming) |
| 11 | | HAGENS BERMAN SOBOL SHAPIRO LLP |
| 12 | | 1301 Second Avenue, Suite 2000 <br> Seattle, WA  98101 |
| 13 | | Telephone: (206) 623-7292 <br> Facsimile:  (206) 623-0594 |
| 14 | | steve@hbsslaw.com |
| 15 | | martym@hbsslaw.com <br> jakeb@hbsslaw.com |
| 16 | | laurenm@hbsslaw.com |
| 17 | | Robert C. Hilliard (*pro hac vice* forthcoming) |
| 18 | | Marion M. Reilly (*pro hac vice* forthcoming) <br> Jessica J. Pritchett (*pro hac vice* forthcoming) |
| 19 | | HILLIARD MARTINEZ GONZALES LLP |
| 20 | | 719 S. Shoreline Boulevard <br> Corpus Christi, TX 78401 |
| 21 | | Telephone: (361) 882-1612 <br> Facsimile:  (361) 882-3015 |
| 22 | | bobh@hmglawfirm.com |
| 23 | | marion@hmglawfirm.com <br> jpritchett@hmglawfirm.com |
| 24 | | |
| 25 | | *Attorneys for Plaintiff Shelley Favours* |
| 26 | | |
| 27 | | |
| 28 | | |